Artis H. WARREN, Plaintiff,

v.

Patricia Roberts HARRIS, etc.,
Defendant.

No. CIV–2–79–179.

United States District Court,
E. D. Tennessee,
Northeastern Division.

July 11, 1980.

Myers N. Massengill, Bristol, Tenn., for plaintiff.

John H. Cary, U. S. Atty., Knoxville, Tenn. by Guy W. Blackwell, Asst. U. S. Atty., Greeneville, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is the judicial review of the claim of the plaintiff Mrs. Warren of the final decision of the defendant Secretary, denying her claim for disability health insurance benefits under the Social Security Act. 42 U.S.C. §§ 416(i), 423. She filed an application for such benefits on November 17, 1978, alleging that she first became disabled on that day due to a slipped-disc and trouble in her colon. The plaintiff amended her disability onset-date afterward to July 28, 1972.

The defendant, through her administrative law judge, found that Mrs. Warren "* * * did not have a severe impairment * * *" on or before July 30, 1977 when she last met the Act's special earnings requirement, and that, therefore, she was not under a compensable disability. *See* 20 C.F.R. § 404.1504(a). The Secretary's appeals council, in affirming this decision, found that the plaintiff's impairments were not so severe as to prevent her from performing her past relevant work. *See* 20 C.F.R. § 404.1503(e). These findings by the Secretary are conclusive if they are supported by substantial evidence in this record. *Wokojance v. Weinberger*, C.A. 6th (1975), 513 F.2d 210, 212[3], 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 82.[1]

The plaintiff was involved in an automobile accident in July, 1972. She was hospitalized 3 times that year. Diagnoses of her condition included acute sprain of her cervical and lumbar spine and multiple contusions. Dr. Joseph K. Maloy, an orthopedist, stated in July, 1973 that he did not anticipate a significant impairment and that Mrs. Warren could do light work.

Mrs. Warren was hospitalized twice in 1974 on her various complaints of pain. On the first occasion, it was noted that she had had "* * * many neurotic complaints for many years, * * *" dating back to the death of her son in 1969. The final diagnosis of her was psychoneurosis and diabetes mellitus, subclinical.[2] On the second such visit, the attending physician reported that "* * * [b]asically, she has been in good health, * * *" but that she probably had arthritis. A marked cervical stricture was revealed.

The plaintiff was admitted again to a hospital twice in 1975 for complaints of abdominal-pain. During the first of those visits, sulfa drugs were administered and Mrs. Warren was discharged after a week with a possible diagnosis of regional enteritis. During the second visit it was noted that she had not improved. A colonscopy and an esophagastroduodenoscopy revealed no pathology. Mrs. Warren was treated conservatively and was discharged with a diagnosis of abdominal pain, the cause of which was unknown.

The plaintiff was hospitalized twice in 1976. During the first visit that year, an examination of her small bowel revealed a condition suggestive of enteritis. Conservative treatment was recommended. During the second visit, Mrs. Warren complained of pain in her back and buttocks. An examination revealed that she had limited back-motion and limited straight-leg raising. The discharge diagnosis was chronic lumbar sprain.

---

1. "Substantial evidence" constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. *Consolo v. Federal Maritime Com.* (1966), 383 U.S. 607, 619–620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131, 140–141[9].

2. The qualifications of the doctor who gave Mrs. Warren a physical examination and made this diagnosis do not appear in the record.

Dr. Charles T. Underwood, a general practitioner, admitted Mrs. Warren to a hospital for 10 days in April, 1977 during which time a laparoscopy was performed. The discharge diagnosis was that of pelvic abdominal pain, etiology unclear.

The plaintiff underwent a total abdominal hysterectomy, a bilateral salpinogo-oophorectomy, and an appendectomy in May, 1977 while attended by Dr. Charles H. Hillman, an obstetrician and gynecologist. She was discharged in an improved condition with a final diagnosis of adenomysis of the uterus; chronic cervicitis; atrophy of the ovaries; and menopausal syndrome. Dr. Hillman made post-operative examinations in July, 1977 and February, 1978 and reported "* * * good results. * * *"

Dr. Underwood stated in January, 1979 that the plaintiff was being treated with muscle relaxants, sedatives for pain, and medication for her severe nervous condition and severe menopausal syndrome. In January and May, 1979 he reported that Mrs. Warren could perform "* * * sedentary * * *"[3] work but in July, 1979 he changed this to "* * * less than a full range of sedentary work * * *" from February, 1977 onward due to the plaintiff's "* * * multiple physical problems. * * *"

Dr. James B. McKinnon, an internist and allergist, examined Mrs. Warren in April, 1979. He thought she then had the amount of disability with arthritis compatible with her age which would probably not interfere with "* * * limited or sedentary activities. * * *" Dr. McKinnon recommended that an orthopedist perform a complete evaluation of the plaintiff.

Dr. Robert T. Strang, an orthopedist, completed a physical capacities' evaluation form in August, 1979, indicating that Mrs. Warren could, in an 8-hour day, sit, stand and walk for 6 hours, lift and carry up to 20 pounds occasionally, use her hands and feet for repetitive movements, and bend, squat, crawl, climb and reach above shoulder level occasionally. The plaintiff stated that Dr.

Strang treated her in 1972, 1973, 1976, 1978 and 1979.

Dr. Robert C. Patton, a gastroenterologist, examined the plaintiff in April and May, 1979 to evaluate her multiple gastrointestional complaints and pain in her upper right quadrant. He noted that Mrs. Warren's esophageal reflux and irritable colon were controlled, but that her right-flank pain persisted. The plaintiff reported that increased activity aggravated her pain. Medications and a 3-week period of rest were suggested with physical therapy recommended if she did not improve.

Dr. Jack C. Neale, III, a child psychiatrist, examined the plaintiff in April, 1979. His impression was that of depressive neurosis. Although he did not think Mrs. Warren could respond appropriately to ordinary work-pressures, the bulk of his report, including his responses on a residual capacities' evaluation form, indicated the plaintiff's impairments were in the mild to moderate range only.

Mrs. Warren was born November 6, 1926 attended through the 7th-grade in public school, and can read, write and do ordinary arithmetic. Her work experience is as a retail store clerk, a sewing-machine operator and a factory-line assembler. This assembly-line work involved sitting for 8 hours doing fine hand-manipulation of parts. The clerking job required her to be on her feet all day, to walk and to stoop. The sewing-machine operator job required her to sit, use her hands and legs, and lift and carry up to 20 pounds.

At the administrative hearing herein, Mrs. Warren complained of headaches, stomach problems, vomiting, sleeplessness, and pain in her neck, back, hips and legs. She takes a variety of medications. She testified that she is always in pain, whether sitting or standing, and that her problems had worsened during the preceding year. Mrs. Warren can care for her own needs; she makes the beds, cooks, washes dishes, does the laundry, dusts, shops for groceries,

---

**3.** On the forms completed by Dr. Underwood, sedentary work is defined as: "* * * lifting 10 pounds maximum. Includes occasionally lifting and/or carrying small objects. Involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met. * * *" The Secretary's official definition of sedentary work is similar. 20 C.F.R. § 404.1510(b).

goes to church, watches television and reads. She attends the needs of her 11-year old granddaughter who, at the time of the hearing, had lived with her for 1 year. The plaintiff's husband, her sister-in-law and two neighbors generally corroborated Mrs. Warren's testimony.

The burden was on Mrs. Warren to have proved her entitlement to the disability insurance benefits which she sought. *Garrett v. Finch*, C.A.6th (1970), 436 F.2d 15, 18[2]. The Secretary and her administrative law judge, as the factfinders, possessed the power to weigh and evaluate the evidence and resolve all conflicts in it. *Lane v. Gardner*, C.A.6th (1967), 374 F.2d 612, 616[2].

■ The mere presence of a physical or mental impairment, alone, is not enough to warrant an award of such disability benefits; for the plaintiff must also be precluded from engaging in any substantial gainful activity by reason of such impairment or combination of impairments. *King v. Gardner*, C.A.6th (1967), 370 F.2d 652, 654[1]. Any such impairment must be proven through medically acceptable clinical and laboratory diagnostic techniques. *Floyd v. Finch*, C.A.6th (1971), 441 F.2d 73, 75[1]. The opinion of a physician as to the plaintiff's disability is not conclusive of such ultimate issue, but it must be considered and weighed by the Secretary along with other contrary respectable opinions. *Halsey v. Richardson*, C.A.6th (1971), 441 F.2d 1230, 1236. The plaintiff was required to have shown that she became disabled on or before June 30, 1977, *Harrison v. Richardson*, C.A.6th (1971), 448 F.2d 638, 639[1], *see* 42 U.S.C. § 416(i), and that her disability lasted or was expected to last for a continuous period of at least 12 months, *see* 42 U.S.C. § 423(d)(1)(A).[4]

■ There was substantial evidence to support the Secretary's findings that Mrs. Warren's impairments were not so severe as to preclude her performance of her past relevant work or as to be disabling during the relevant period of time. The administrative law judge found that Mrs. Warren did not suffer from a severe impairment of her back. Reports submitted subsequent to his decision provided further support for such a conclusion. Dr. Strang, the orthopedist who had treated Mrs. Warren frequently since 1972, felt that she could perform a considerable number of physical activities. The chiropractor who had treated her since October, 1977 described her impairment as a "* * * chronic cervical strain * * * the severity of which [would] be dependent on how strenuous her activities are. * * *"

There was substantial evidence also that the plaintiff was not suffering from a severe abdominal problem. Although Mrs. Warren has a history of undiagnosed abdominal problems, Dr. Hillman reported in July, 1977 and February, 1978 good results after her May, 1977 surgery.

There are no medical reports in the evidence for the 21 months following such surgery. The plaintiff, however, indicated she had been consulting Dr. Underwood since July, 1978. Twice in 1979 Dr. Underwood reported that Mrs. Warren could perform sedentary work. Dr. Patton indicated in 1979 that Mrs. Warren's esophageal reflux and irritable colon were under control and suggested physical therapy if her right flank-pain persisted.

The plaintiff's emotional problems present a more difficult question, especially when viewed together with all of the evidence of record. Dr. Neale, however, listed the degree of Mrs. Warren's impairments as only mild to moderate. Furthermore, his examination took place some 21 months after she last met the special earnings requirements of the Act.

The plaintiff had the burden to show, by convincing evidence, that this condition was disabling during the relevant period. There was evidence that she had had a nervous condition for a number of years, but the determination of whether such condition, in combination with her other impairments, was disabling was a factual determination

4. Mrs. Warren, of course, is not entitled to receive benefits for those months prior to the twelfth month immediately preceding November 17, 1978, the date on which she filed her application. *See* 42 U.S.C. § 423(b).

for the Secretary and her administrative law judge.

A prima facie case of disability is made when an individual shows that pain renders her unable to perform her usual work. *Allen v. Califano*, C.A.6th (1980), 613 F.2d 139, 144[2]. The plaintiff's past relevant work included jobs as an assembler and as a sewing-machine operator, in the sedentary and light[5] work categories.

 The evaluations of Mrs. Warren's residual-functional capacity, given by Drs. Strang, Underwood and McKinnon, are compatible with such activities. Both Drs. Strang and Underwood treated the plaintiff over a period of time, and both were familiar with her complaints of pain. Dr. Strang was a specialist who had treated Mrs. Warren over a period of years. The Secretary could properly give his opinion significant weight. *Ibid.*, 613 F.2d at 145[3]; *Alvarado v. Weinberger*, C.A.1st (1975), 511 F.2d 1046, 1049[3]; *Hunley v. Cohen*, D.C.Tenn. (1968), 288 F.Supp. 537, 540[1, 2]. Dr. McKinnon was a specialist and the Secretary was entitled to rely upon his report which is not "* * * inconclusive, fragmentary, [or] uncertain, * * *" especially in light of Dr. Strang's subsequent report. Although Dr. Underwood recanted his earlier opinions as to Mrs. Warren's ability to perform sedentary work, this conflict in the evidence was for the Secretary to resolve. *Lane v. Gardner, supra.*

Although pain alone may be disabling, *Glass v. Secretary of Health, Ed. & Welfare*, C.A.6th (1975), 517 F.2d 224, 225, the factfinder was not forbidden to conclude, based on evidence more persuasive than the plaintiff's allegations of pain, that such pain was not disabling. *Halsey v. Richardson, supra*, 441 F.2d at 1236. The pleadings and exhibits showing that the defendant Secretary is entitled to a judgment as a matter of law, the defendant's motion for judgment on the pleadings hereby is GRANTED and the plaintiff's motion for same hereby is DENIED. Rule 12(c), Federal Rules of Civil Procedure. Judgment will enter, affirming the final decision herein of the defendant. Rule 58(1), Federal Rules of Civil Procedure.

---

5. Light work is defined by the Secretary as work which:

> * * * entails lifting 20 pounds maximum with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be only a negligible amount, a job is in this category when it requires walking or standing to a significant degree, or when it involves sitting most of the time with a degree of pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must be capable of performing substantially all of the foregoing activities.