NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 09-1546

———

RAFAELA A. CERRATO,
                              Appellant
                    v.

COMMISSIONER OF SOCIAL SECURITY

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-08-cv-00277)
District Judge: Honorable Stanley R. Chesler

———

Submitted Under Third Circuit LAR 34.1(a)
June 29, 2010

Before:  SLOVITER, BARRY and HARDIMAN, Circuit Judges

(Opinion Filed: July 2, 2010)

———

OPINION

———

SLOVITER, *Circuit Judge*.

Appellant Rafaela Cerrato ("Cerrato") appeals the final order of the District Court affirming the decision of the Commissioner of Social Security denying Cerrato's application for Social Security Disability benefits and Supplemental Security Income benefits. Cerrato argues that she is disabled under the Social Security Act and that the decision of the Commissioner was not supported by substantial evidence. We will affirm.

## I.

Cerrato came to the United States in 1989 after graduating from college in the Dominican Republic with a degree in Business Administration. She is fifty-four years old and has worked as a packager, housekeeper, and flower arranger. Cerrato states that she became disabled in 2001 due to the effects of a fracture to her right foot sustained that year, as well as degenerative disc disease of the spine, hypertension, diabetes, and depression.

In the hearing before an Administrative Law Judge ("ALJ"), Cerrato testified that she is able to perform minor household chores but that her sister and daughter help her with cooking and shopping. Although Cerrato acknowledged taking three hour flights to and from the Dominican Republic while suffering from the same ailments, she claimed that she is unable to sit for prolonged periods,[1] and asserted that she can only walk "[h]alf

---

[1] The ALJ moreover found that Cerrato "took an additional trip" to the Dominican Republic after she filed for disability insurance benefits and supplemental security income. R. at 28.

2

a [city] block." R. at 507.

Cerrato submitted a Physical Residual Functional Capacity Questionnaire in which one of her doctors reported that her impairments lasted or were expected to last twelve months, that she experienced pain "constantly," and that she was "[i]ncapable of even 'low stress' jobs[.]" R. at 375. The ALJ also noted the opinions of other physicians, one of whom stated that Cerrato had "no limitations of walking, gait, household maintenance, travel on public transportation" and "[s]he is able is able to shop, and only needs help because of poor memory." R. at 355. Moreover, a state appointed psychologist provided a Mental Residual Functional Capacity Assessment, concluding that Cerrato was able to perform "simple routine work-related activities." R. at 205.

After the hearing, the ALJ obtained answers to interrogatories from a vocational expert, stating that Cerrato's age, education, work experience, and capacity enabled her to perform jobs that are "unskilled and light." R. at 454. Specifically, the expert listed gate guard, school bus monitor, flagger, or cafeteria attendant. According to the expert, approximately 1,200 such jobs existed in the regional market, with approximately 25,000 in the national market.

The ALJ held that Cerrato's impairments did not "preclude *all* work activity," R. at 20 (emphasis in original), and found that her allegations of total disability lacked credibility because they were unsubstantiated by objective medical evidence and inconsistent with "her reports of her daily activities." R. at 28. In light of the vocational

3

expert's testimony that Cerrato was capable of performing jobs that exist in significant numbers, the ALJ ruled that Cerrato was not disabled for purposes of the Social Security Act. The District Court affirmed, and Cerrato appealed.[2]

**II.**

We review the ALJ's factual findings to determine whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence constitutes "such relevant evidence as a reasonable mind might accept as adequate," and is "more than a mere scintilla." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)) (internal quotations omitted).

To be eligible for disability benefits, Cerrato must demonstrate that her impairments are "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy," 42 U.S.C. § 423(d)(2)(A), due to "any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months," *id.* at § 423(d)(1)(A).

To verify a claimant's eligibility, the ALJ must perform a five-step sequential

---

[2]The District Court exercised jurisdiction under 42 U.S.C. § 405(g). We have appellate jurisdiction under 28 U.S.C. § 1291.

4

analysis; if any step in the analysis determines a claimant to be either disabled or not disabled, a decision is made at that step and the sequence concludes. 20 C.F.R. §§ 404.1520 & 416.920. The ALJ found that although Cerrato asserted a spinal impairment, and an MRI indicated mild degenerative changes, Cerrato's conditions did not meet the Listing of Impairments requirements (step 3), because there was neither "significant narrowing of the central spine canal [n]or neural foramina." R. at 331.

The ALJ noted that after Cerrato underwent a minimally invasive back surgery, she did not take any pain medication and her doctor recorded that the procedure resolved Cerrato's pain and that she was "doing very well." R. at 472. Indeed, just a few months after that surgery, Cerrato stated to a social worker that her surgery had been "successful," that her pain had decreased, and that she could "ambulate independently again." R. at 461. Consequently, even if Cerrato's impairment had been severe enough to satisfy the Listing requirements prior to the surgery, the condition did not last the requisite twelve months to qualify her for disability benefits. *See generally Barnhart v. Walton*, 535 U.S. 212, 217, 222 (2002) (upholding Social Security Administration's rule that a claimant is not disabled if "within 12 months after the onset of an impairment . . . the impairment no longer prevents substantial gainful activity") (quoting 65 Fed. Reg. 42774 (2000)).

We agree with the government that there was substantial evidence to support the ALJ's conclusion that Cerrato's physical symptoms were not as disabling as she claimed, given Cerrato's reports of her activities throughout the record (including

5

household chores, use of public transportation, and occasional assistance at her sister's convenience store). Cerrato's continuous performance of those activities was more than "sporadic and transitory." *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (quoting *Willem v. Richardson*, 490 F.2d 1247, 1249 n.4 (8th Cir. 1974)). The ALJ has discretion to "evaluate the credibility of a claimant and . . . arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged . . . ." *Brown v. Schweiker*, 562 F. Supp. 284, 287 (E.D. Pa. 1983) (internal quotations omitted). Moreover, subjective statements of symptoms alone are not sufficient to find disability. 20 C.F.R. § 404.1529(a).

Moreover, the ALJ concluded that Cerrato's depression could not be as debilitating as she asserted. The record showed that Cerrato could "understand, carry out, and remember instructions, as well as . . . respond appropriately to supervisors, co-workers, and work stresses in a low stress, non production quota work setting." R. at 29; *see also La Corte v. Bowen*, 678 F. Supp. 80, 83 (D.N.J. 1988) (holding that an ALJ may give little weight to a claimant's complaints and instead rely on medical evidence or activity reports s/he deems more credible).

At the fifth step, the Commissioner bears the burden of demonstrating that substantial numbers of jobs that the claimant can perform exist in the national economy. *Plummer*, 186 F.3d at 428. Cerrato argued that "objective medical findings [did not] support the [ALJ's]" conclusion that she could complete light work, Appellant's Br. at 30,

6

but several reports from Cerrato's doctors suggest that despite physical and mental limitations, she maintains sufficient capacity to perform some work.

Cerrato also argues that the ALJ erred in finding that she could perform light work and incorrectly relied on a vocational expert's testimony, which was based on a "flawed hypothetical" that did not include all of her alleged symptoms. Appellant's Br. at 38. Although the hypothetical posed to the vocational expert did not include all of Cerrato's alleged symptoms, we have held that a vocational hypothetical must specify only those impairments that are supported by the record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (citing, inter alia, *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). The ALJ did not incorporate into the hypothetical Cerrato's subjective complaints of pain and depression because, as the ALJ explained, she gave little credence to the reports that corroborated those symptoms. Accordingly, the vocational hypothetical was not "defective," as Cerrato avers. Appellant's Br. at 42. In short, the ALJ demonstrated that the rationale underlying her decision was "clearly disclosed and adequately sustained." *See Hargenrader v. Califano*, 575 F.2d 434, 436 (3d Cir. 1978) (quoting *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943)).

## III.

For the above-stated reasons, we will affirm the judgment of the District Court.